Brewster H. Jamieson, ABA No. 8411122
Michael B. Baylous, ABA No. 0905022
LANE POWELL LLC
1600 A Street, Suite 304
Anchorage, Alaska 99501
Telephone: 907-264-3325
            907-264-3303
Facsimile: 907-276-2631
Email:      jamiesonb@lanepowell.com
            baylousm@lanepowell.com

Attorneys for Defendants Tyco Fire
Products LP and Chemguard, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JAMES F. SARACCO AND LISA L. ETHERINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF ALASKA AND CITY OF GUSTAVUS,<br><br>Defendants | |
| STATE OF ALASKA,<br>         Third-Party Plaintiffs,<br><br>v.<br><br>3M COMPANY, E. I. DUPONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, DUPONT DE NEMOURS INC., CORTEVA, INC., TYCO FIRE PRODUCTS LP, CHEMGUARD, INC., JOHNSON CONTROLS INTERNATIONAL, PLC, CENTRAL | Case No. 1:21-cv-00015-JWS<br><br>**NOTICE OF REMOVAL** |

SPRINKLER, LLC, FIRE PRODUCTS GP
HOLDING, LLC, KIDDE-FENWAL,
INC., KIDDE PLC, INC., CHUBB FIRE,
LTD., UTC FIRE & SECURITY
AMERICAS CORPORATION, INC.,
RAYTHEON TECHNOLOGIES
CORPORATION, CARRIER GLOBAL
CORPORATION, NATIONAL FOAM,
INC., ANGUS INTERNATIONAL
SAFETY GROUP, LTD, BUCKEYE FIRE
EQUIPMENT COMPANY, ARKEMA,
INC., BASF CORPORATION,
CHEMDESIGN PRODUCTS, INC.,
DYNAX CORPORATION, CLARIANT
CORPORATION, CHEMICALS
INCORPORATED, NATION FORD
CHEMICAL COMPANY, AGC, INC.,
AGC CHEMICALS AMERICAS, INC.,
DEEPWATER CHEMICALS, INC.,
ARCHROMA MANAGEMENT, LLC,
ARCHROMA U.S., INC., and JOHN DOE
DEFENDANTS 1-49,

        Third-Party Defendants.

Defendants Tyco Fire Products LP and Chemguard, Inc. ("Tyco and Chemguard"), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court for the State of Alaska, First Judicial District at Juneau, to the United States District Court for the District of Alaska. As grounds for removal, Tyco and Chemguard allege as follows on personal knowledge as to their own conduct and status and on information and belief as to all other matters:

## I. PRELIMINARY STATEMENT

1. The State of Alaska filed its Third-Party Complaint in this matter seeking to hold Tyco and Chemguard and certain other Third-Party Defendants liable via apportionment of fault and equitable apportionment of damages based on their alleged conduct in designing, manufacturing, marketing, and/or selling aqueous film-forming

foams ("AFFF") that the State of Alaska is alleged to have used, and which allegedly caused harm to plaintiffs in the underlying lawsuit *Saracco v. State of Alaska*, Case No. 1JU-20-00758CI (Super. Ct. Alaska, 1st Judicial Dist. at Juneau, filed Aug. 24, 2020) ("*Saracco*"). (Ex. A, Third-Party Compl.; Ex. B, *Saracco* Compl.).

2. In *Saracco*, plaintiffs James F. Saracco and Lisa L. Etherington ("Plaintiffs") allege, *inter alia*, that the State of Alaska contaminated their property with per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), due at least in part to discharge of AFFF for emergency response and training exercises at the Gustavus Airport (the "Airport"). (Ex. B, *Saracco* Compl. ¶ 23).

3. The Airport is a "Part 139" civilian airport,[1] which is required by law to stock and use AFFF manufactured by a select group of suppliers (including Tyco and Chemguard) whose products appear on the Department of Defense ("DoD") Qualified Products List for sale to the United States military and others in accordance with the military's rigorous specifications ("MilSpec AFFF"). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco and Chemguard are immune to tort liability for their design and manufacture of MilSpec AFFF and their provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco and Chemguard are entitled to remove this action as a whole in order to have their federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016) (alterations in original). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

---

[1] *See* FAA Part 139 Airport Certification Status List (last updated Aug. 3, 2021), available at https://www.faa.gov/airports/airport_safety/part139_cert/.

## II. BACKGROUND

4. The Third-Party Complaint was filed on April 7, 2021, in the Superior Court for the State of Alaska, First Judicial District at Juneau, in the matter bearing Case No. 1JU-20-00758CI (Ex. A, Third-Party Compl.). Venue is proper in this Court pursuant to 28 U.S.C. §§ 81A and 1441(a) because the Superior Court for the State of Alaska, First Judicial District at Juneau, is located within the District of Alaska.

5. Tyco was served with the Third-Party Complaint on July 28, 2021. Chemguard has not been served with the Third-Party Complaint or with any other process, pleadings, or orders in this action.

6. Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant or Third-Party Defendant in this action in order to remove the State's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).[2]

7. The State of Alaska generally alleges that certain Third-Party Defendants, including Tyco and Chemguard, have designed, manufactured, marketed, distributed, and/or sold AFFF products, which contain PFAS, including PFOS, PFOA, and/or their precursors (Ex. A, Third-Party Compl. ¶¶ 3–4). The State alleges that the AFFF designed, manufactured, marketed, distributed, and/or sold by these Third-Party Defendants, due to use in firefighting activities, caused the contamination of the groundwater around the Airport and elsewhere. (*Id.* ¶¶ 65–73). The State alleges that it has thereby sustained

---

[2] Although Tyco and Chemguard are third-party defendants, this Court has the authority under § 1442 to exercise jurisdiction under "over the entire case." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 341 F. Supp. 2d 351, 359 (S.D.N.Y. 2004) (quoting *Reese v. S. Fla. Water Mgmt. Dist.*, 853 F. Supp. 413, 414 (S.D. Fla. 1994)); *see id.* at 362 (denying plaintiff's motion to remand case removed by third-party defendant); *In re Nat'l Sec. Agency Telecommc'ns Recs. Litig.*, 483 F. Supp. 2d 934, 946 (N.D. Cal. 2007) (noting that "courts regularly permit third-party defendants to remove under § 1442(a)(1)" and denying motion to remand).

unreasonable interference with and damage to its property, its natural resources, and its citizens, and accordingly seeks relief and allocation of fault in the underlying action. (*Id.* ¶¶ 90–94).

8. The State of Alaska seeks to apportion fault and damages in the *Saracco* matter, as well as attorneys' fees and costs, and other relief. (*Id.* at 24–25.)

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for the State of Alaska and a copy is being filed with the Clerk of the Superior Court for the State of Alaska, First Judicial District at Juneau.

10. By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11. Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

### III. REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

12. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (d) it can assert a "colorable" federal defense. *Papp*, 842 F.3d at 812; *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

13. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint;

the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

14. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the alleged injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and Chemguard and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and Chemguard and other AFFF manufacturers). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in

AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[3]

**A.  MilSpec AFFF**

15.  Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Because of its effectiveness, MilSpec AFFF has also been mandated in other settings, including civilian airports, where fuel fires are an acute risk. Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[4] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[5]

16.  The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[6] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[7] The MilSpec designates Naval Sea Systems Command as the

---

[3] Following removal, Tyco and Chemguard intend to designate this action for transfer to the MDL.

[4] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[5] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[6] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[7] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

17. From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

18. So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. *See* 14 C.F.R. § 139.1 (2019). The federal government requires Part 139 airports to use MilSpec AFFF. On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[9] Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the

---

[8] *Id.*

[9] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[10] The FAA explained:

> There are several reasons for this requirement. First of all, AFFF has to be compatible when mixed. AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible. AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer. Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire. Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[11]

19. On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[12] Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

          *1.     The "Person" Requirement Is Satisfied*

20. The first requirement for removal under the federal officer removal statute is satisfied here because Tyco and Chemguard (a limited partnership and corporation, respectively) are "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships."

---

[10] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[11] *Id.*

[12] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

*Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett*, 607 F.3d at 1085; *Isaacson*, 517 F.3d at 135–36.

### 2. *The "Acting Under" Requirement Is Satisfied*

21. The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

22. The requirement of "acting under" federal office is met here because the State's claims, at least in part, challenge Tyco and Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[13] Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF. *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and Chemguard and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because

---

[13] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

Notice of Removal
*Saracco, et al. v. State of Alaska, et al.* (Case No. 1:21-cv-00015-JWS)   Page 10 of 17

Case 1:21-cv-00015-SLG   Document 1   Filed 08/16/21   Page 10 of 17

defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at airport); MDL Order 3, at 3–6 (same). If Tyco and Chemguard and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

23. In designing, manufacturing and supplying the MilSpec AFFF at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers. Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[14]

### 3. The Causation Requirement Is Satisfied

24. The third requirement, that the defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (alteration, citation, and internal quotation marks omitted); *accord Papp*, 842 F.3d at 813. Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[15] To show causation, a defendant need only establish that an act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties. *Isaacson*, 517 F.3d at 137–38.

25. Here, the State's claims arise at least in part from Tyco and Chemguard's production and sale of AFFF manufactured to military specifications. The State alleges that the use of PFAS in AFFF is the source of Plaintiffs' injuries. Tyco and Chemguard contend that the use of such chemicals in MilSpec AFFF procured by the Airport was

---

[14] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[15] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco, Chemguard, and other manufacturers to meet specifications established by the DoD. The design choices the State is attempting to impose via state tort law would create a conflict in which Tyco and Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Tyco and Chemguard's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

26. Here, Plaintiffs' purported injuries—and the State's alleged liabilities and third-party claims—arise at least in part from MilSpec AFFF. The causal connection between Plaintiffs' alleged injuries and the State's third-party claims on the one hand, and Tyco and Chemguard's actions under color of federal office on the other, is clear. It is irrelevant that neither Plaintiffs nor the State expressly contend that they have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4. *The "Colorable Federal Defense" Requirement Is Satisfied*

27. The fourth requirement ("colorable federal defense") is satisfied by Tyco and Chemguard's assertion of the government contractor defense.

28. At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could]

reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[16] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

29. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

30. Tyco and Chemguard have satisfied these elements for purposes of removal. MilSpec AFFF, regardless of where it is used, is a military product. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and

---

[16] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

labeling. Tyco and Chemguard's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco and Chemguard); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

31. Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[17] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[18] By no later than 2001, DoD was aware of data purportedly showing

---

[17] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[18] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam*

Notice of Removal
*Saracco, et al. v. State of Alaska, et al.* (Case No. 1:21-cv-00015-JWS)  Page 14 of 17

PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[19] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[20] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

32. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See*

---

*(AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[19] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[20] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

*Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

33. Tyco and Chemguard's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco and/or Chemguard for alleged injuries caused in whole or in part by Tyco and Chemguard's compliance with military specifications, the State is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

WHEREFORE, Tyco and Chemguard hereby remove this action from the Superior Court for the State of Alaska, First Judicial District at Juneau, to this Court.

DATED this 16th day of August, 2021.

        LANE POWELL LLC
        Attorneys for Defendants Tyco Fire
        Products LP and Chemguard, Inc.


By  s/ Michael B. Baylous
    Brewster H. Jamieson, ABA No. 8411122
    Michael B. Baylous, ABA No. 0905022

I certify that on August 16, 2021, a copy of
the foregoing was served via mail and email on:

Aaron D. Sperbeck and Michael J. Schwarz
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, AK 99501
asperbeck@bhb.com; mschwarz@bhb.com

Daryl A. Zakov
State of Alaska
Department of Law
1031 W. Fourth Avenue, Suite 200
Anchorage, AK 99501
daryl.zakov@alaska.gov

Christian Bataille
Flanigan & Bataille
1007 W. 3rd Avenue, Suite 206
Anchorage, AK 99501
cbataille@farnothlaw.com

Kevin S. Hannon
The Hannon Law Firm
1641 Downing Street
Denver, CO 80218
khannon@hannonlaw.com

Robert Blasco
Hoffman & Blasco, LLC
9360 Glacier Highway, Suite 202
Juneau, AK 99801
rpblasco@hoffmanblasco.com

s/ Michael B. Baylous