State of Alaska
Treg R. Taylor, Attorney General
Daryl A. Zakov
Department of Law
1031 W. Fourth Avenue, Suite 200
Anchorage, AK 99501
daryl.zakov@alaska.gov
Telephone 907.269.5100
Facsimile 907.276.3697

Aaron D. Sperbeck
Michael J. Schwarz
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
asperbeck@bhb.com
mschwarz@bhb.com
Telephone 907.276.1550
Facsimile 907.276.3680

Attorneys for the State of Alaska

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| JAMES F. SARACCO and LISA L. ETHERINGTON, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF ALASKA, and CITY OF GUSTAVUS, <br><br> Defendants. <br>───────────────────────── <br> STATE ALASKA, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> 3M COMPANY, E. I. DUPONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY, THE CHEMOURS | Case No. 1JU-20-00758 CI |

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.            CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES            PAGE 1 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 1 of 26**

COMPANY FC, LLC, DUPONT DE
NEMOURS, INC., CORTEVA, INC., TYCO
FIRE PRODUCTS LP, CHEMGUARD, INC.,
JOHNSON CONTROLS INTERNATIONAL,
PLC, CENTRAL SPRINKLER, LLC, FIRE
PRODUCTS GP HOLDING, LLC, KIDDE-
FENWAL, INC., KIDDE PLC, INC., CHUBB
FIRE, LTD., UTC FIRE & SECURITY
AMERICAS CORPORATION, INC.,
RAYTHEON TECHNOLOGIES
CORPORATION, CARRIER GLOBAL
CORPORATION, NATIONAL FOAM, INC.,
ANGUS INTERNATIONAL SAFETY GROUP,
LTD, BUCKEYE FIRE EQUIPMENT
COMPANY, ARKEMA, INC., BASF
CORPORATION, CHEMDESIGN
PRODUCTS, INC., DYNAX CORPORATION,
CLARIANT CORPORATION, CHEMICALS
INCORPORATED, NATION FORD
CHEMICAL COMPANY, AGC, INC., AGC
CHEMICALS AMERICAS, INC.,
DEEPWATER CHEMICALS, INC.,
ARCHROMA MANAGEMENT, LLC,
ARCHROMA U.S., INC., and JOHN DOE
DEFENDANTS 1-49,

       Third-Party Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## DEFENDANT STATE OF ALASKA'S
## THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES

COMES Now the State of Alaska (the "State" or "Third-Party Plaintiff"), by and

through its Attorney General, Treg R. Taylor, and pursuant to his constitutional, statutory,

and common law authority, including the authority granted by AS 44.23.020, 09.17.080,

and Alaska R. Civ. P. 14(c), hereby files its Third-Party Complaint for allocation of fault

and equitable apportionment of damages against the named Third-Party Defendants,

stating and alleging as follows:

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.           CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES       PAGE 2 OF 26
508412/3/ 01061078.DOCX

## INTRODUCTION AND NATURE OF THE THIRD- PARTY ACTION

1.     The State brings this action against Third-Party Defendants for contamination of the natural resources of the State, including but not limited to the lands, waters, biota, and wildlife, as a result of the release of per- and polyfluoroalkyl substances ("PFAS") into the environment through the handling, use, disposal, and storage of products containing PFAS.

2.     PFAS are a class of man-made chemicals that include perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

3.     In this Third-Party Complaint, references to PFOS and PFOA also include all of their salts and precursor chemicals.

4.     Third-Party Defendants designed, manufactured, marketed, sold and/or assumed or acquired liabilities for the manufacture and/or sale of PFOS, PFOA, and/or products containing PFOS or PFOA, including but not limited to aqueous film-forming foam ("AFFF") (collectively, "Fluorosurfactant Products").

5.     PFOS and PFOA present a significant threat to the State's natural resources, properties, and residents. PFOS and PFOA are highly mobile and persistent in the environment, and they are toxic at extremely low levels. Furthermore, they are bioaccumulative and biomagnify up the food chain.

6.     Third-Party Defendants designed, manufactured, formulated, distributed, marketed, and/or sold Fluorosurfactant Products with the knowledge that these compounds were toxic and that they would be released into the environment even when used as directed and intended by Third-Party Defendants.

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.          CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 3 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 3 of 26**

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 3 of 26

7.      Additionally, Third-Party Defendants failed to provide adequate warnings or instructions with their Fluorosurfactant Products, both before and after selling such Products. Third-Party Defendants failed to adequately advise their customers, the public, or the State about the threats PFOS or PFOA pose to natural resources and human health if released into the environment.

8.      Third-Party Defendants, by their actions and/or inactions, bear ultimate responsibility for the release of vast amounts of PFOS and PFOA into Alaska's environment, contaminating the State's water resources, soils, sediments, biota and wildlife, threatening the health, safety, and well-being of the State's residents.

9.      Third-Party Defendants' Fluorosurfactant Products have caused and will continue to cause injury to the State's environment, natural resources, properties, and residents.

10.     Accordingly, the State, through this action, seeks to equitably allocate fault to each responsible Third-Party Defendant, to make the State whole, and requiring them to pay all costs necessary to fully investigate and determine the various locations throughout Alaska where their Fluorosurfactant Products were used, stored, discharged, released, spilled, and/or disposed, as well as all areas affected by their Fluorosurfactant Products.

11.     Likewise, this action seeks to require Third-Party Defendants to pay all costs necessary to investigate, assess, remediate, monitor, filtrate and/or restore the sites in Alaska where their Fluorosurfactant Products were used, stored, discharged, spilled, and/or disposed, including but not limited to the sediment, soil, surface waters, groundwaters, drinking water or water systems located thereon as well as any off-site

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.          CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 4 OF 26
508412/3/ 01061078.DOCX

areas and natural resources that have been contaminated by their Fluorosurfactant Products.

12.     Additionally, this action seeks to require Third-Party Defendants to pay all past and future costs incurred by the State in investigating, monitoring, and otherwise responding to injuries and/or threats to public health, as well as damages for harm to the State's natural resources, caused by Third-Party Defendants' Fluorosurfactant Products.

13.     Further, Alaska governmental entities that purchased Third-Party Defendants' Fluorosurfactant Products are now forced to spend additional money to properly dispose of any remaining inventory. Such costs are rightfully borne by Third-Party Defendants and, as such, are also sought through this action.

14.     Lastly, Third-Party Plaintiff seeks the full allocation of damages against Third-Party Defendants that Plaintiffs may be entitled to recover including, but not limited to, property damages to personal and real property, economic and non-economic damages, punitive damages, and all other damages, fees, costs, and equitable relief to which Plaintiffs may be entitled.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction based upon AS 22.10.020 and Alaska R. Civ. P. 14(c) which grants the State authority to file suit against Third-Party Defendants.

16.     The Court may properly exercise personal jurisdiction over these Third-Party Defendants because they regularly conduct business in Alaska and/or have the requisite minimum contacts with Alaska necessary to constitutionally permit the Court to

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                     CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES                PAGE 5 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 5 of 26**

exercise jurisdiction over them pursuant to Alaska's Long-Arm Statute, as codified at AS 09.05.015.

17. Venue is proper in the Fourth Judicial District at Fairbanks pursuant to Alaska R. Civ. P. 3 in that many of Third-Party Defendants' unlawful acts and/or practices that give rise to this Third-Party Complaint were committed in this judicial district.

## PARTIES

18. Third-Party Plaintiff is the State of Alaska, acting by and through its Attorney General, Treg R. Taylor, in its sovereign capacity in order to protect the interests of the State and its citizens. The Attorney General brings this action pursuant to his constitutional, statutory, and common law authority, including the authority granted in AS 44.23.020.

19. Upon information and belief, the following Third-Party Defendants, at all times relevant to this action, designed, manufactured, formulated, marketed, distributed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products that Third-Party Defendants knew or reasonably should have known would enter the State of Alaska and be released into the environment, or otherwise conducted business in the State.

20. Third-Party Defendant 3M Company ("3M"), formerly known as Minnesota Mining and Manufacturing Company, is a Delaware corporation with its principal place of business at 3M Center, St. Paul, Minnesota. 3M is the only company that manufactured AFFF containing PFOS and/or its precursor chemicals. 3M is authorized to conduct business in Alaska.

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                    CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES               PAGE 6 OF 26
508412/3/ 01061078.DOCX

Exhibit A
Page 6 of 26

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 6 of 26

21.     Third-Party Defendant E.I. DuPont de Nemours and Company ("DuPont") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware. DuPont is registered to do business in Alaska.

22.     Third-Party Defendant The Chemours Company ("Chemours") is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware. Chemours is registered to do business in Alaska.

23.     In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit, and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorosurfactants and the products that contain fluorosurfactants.

24.     Third-Party Defendant The Chemours Company FC, LLC ("Chemours FC") is a Delaware limited liability company with its principal place of business located at 1007 Market Street Wilmington, Delaware. Chemours FC operates as a subsidiary of Chemours. Upon information and belief, Chemours FC is the successor-in-interest to DuPont Chemical Solutions Enterprise. Chemours FC is registered to do business in Alaska.

25.     Third-Party Defendant DuPont De Nemours, Inc. ("New DuPont") is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware. Upon information and belief, DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont. DowDuPont, Inc. was subsequently divided into three publicly-traded companies and on June 1, 2019,

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                    CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 7 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 7 of 26**

DowDuPont, Inc. changed its registered name to DuPont de Nemours, Inc. Upon information and belief, DowDuPont, Inc. and/or New DuPont have conducted business throughout the United States, including in Alaska.

26.     Third-Party Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware. Upon information and belief, Corteva is one of the aforementioned spin-off companies from DowDuPont, Inc., and is believed to have assumed some of the PFAS liabilities of the former DuPont. Corteva is authorized to conduct business in Alaska.

27.     Third-Party Defendant Tyco Fire Products LP ("Tyco") is a Delaware limited partnership with principal offices located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania. Upon information and belief, Tyco is the successor-in-interest to The Ansul Company ("Ansul") and manufactures the Ansul brand of products. Tyco is an indirect subsidiary ultimately wholly-owned by Johnson Controls International, plc, an Irish public limited company. Tyco is registered to do business in Alaska.

28.     Third-Party Defendant Chemguard, Inc. ("Chemguard") is a Texas corporation with its principal place of business located at One Stanton Street, Marinette, Wisconsin. On information and belief, Chemguard acquired Williams Fire and Hazard Control, Inc. ("WFHC") in 2010. On information and belief, on or around July 9, 2011, Tyco acquired Chemguard and its subsidiary, WFHC. Upon information and belief, Chemguard has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

29.     Third-Party Defendant Johnson Controls International, plc ("JCI plc") is an Irish public limited company with its principal place of business located at One Albert Quay, Cork, Ireland.

30.     Third-Party Defendant Central Sprinkler, LLC is a Delaware limited liability company with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania. Upon information and belief, this Third-Party Defendant is a limited partner of Tyco. Upon information and belief, Chemguard is wholly-owned by Central Sprinkler, LLC.

31.     Third-Party Defendant Fire Products GP Holding, LLC is a Delaware limited liability company with its principal place of business located at 9 Roszel Road, Princeton, New Jersey. Upon information and belief, this Third-Party Defendant is a general partner of Tyco.

32.     Third-Party Defendant Kidde-Fenwal, Inc. ("Kidde") is a Delaware corporation with its principal place of business located at One Financial Plaza, Hartford, Connecticut. Upon information and belief, Kidde was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde is the successor-in-interest to Kidde Fire Fighting, Inc. Kidde is registered to do business in Alaska.

33.     Third-Party Defendant Kidde PLC, Inc. ("Kidde PLC") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut. Upon information and belief, Kidde PLC was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde PLC has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

34.     Third-Party Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, United Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex, United Kingdom. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions including, but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Upon information and belief, Chubb has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

35.     Third-Party Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC Fire & Security") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida. Upon information and belief, UTC Fire & Security was a division of United Technologies Corporation. Upon information and belief, UTC Fire & Security has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

36.     Third-Party Defendant Raytheon Technologies Corporation ("RTC") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut. Upon information and belief, RTC was formerly known as United Technologies Corporation ("UTC") until in or around April 2020 (collectively, "RTC f/k/a UTC"). Upon information and belief, RTC and/or UTC has conducted business throughout the United States, including in Alaska.

37.     Third-Party Defendant Carrier Global Corporation is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida. On information and belief, on or around April 3, 2020, UTC completed the spin-off of one of its reportable segments into a separate publicly-traded company

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES                PAGE 10 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 10 of 26**

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 10 of 26

known as Carrier Global Corporation ("Carrier"). Carrier's operations are classified into three segments: HVAC, Refrigeration, and Fire & Security. Upon information and belief, Carrier's Fire & Security products and services are sold under brand names including Chubb and Kidde. Carrier is registered to do business in Alaska.

38.     Third-Party Defendant National Foam, Inc. ("NF") is a Delaware corporation with its principal place of business located at 141 Junny Road, Angier, North Carolina. NF is a wholly-owned indirect subsidiary of Angus International Safety Group, Ltd. Upon information and belief, NF manufactures the Angus Fire brand of AFFF products. Upon information and belief, NF has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

39.     Third-Party Defendant Angus International Safety Group, Ltd. ("AISG") is a foreign private limited company, United Kingdom registration number 8441763, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom. Upon information and belief, AISG is the parent company of National Foam, Inc.

40.     Third-Party Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina. Upon information and belief, Buckeye conducted and/or availed itself of doing business throughout the United States, including in Alaska.

41.     Third-Party Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania. Upon information and belief, Arkema conducted and/or availed itself of doing business throughout the United States, including in Alaska.

42. Third-Party Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals. BASF is authorized to conduct business in Alaska.

43. Third-Party Defendant ChemDesign Products, Inc. ("CDPI") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin. Upon information and belief, CDPI manufactured, formulated, and/or sold Fluorosurfactant Products to certain Third-Party Defendants for use in AFFF. Upon information and belief, CDPI conducted and/or availed itself of doing business throughout the United States, including in Alaska.

44. Third-Party Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York. Upon information and belief, Dynax manufactured, formulated, and/or sold Fluorosurfactant Products to certain Third-Party Defendants for use in AFFF. Upon information and belief, Dynax has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

45. Third-Party Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina. Clariant is authorized to conduct business in Alaska.

46. Third-Party Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas. Upon information and belief, Chem Inc. manufactured, formulated, and/or sold Fluorosurfactant Products to certain Third-Party Defendants for use in AFFF.

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.      CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES      PAGE 12 OF 26
508412/3/ 01061078.DOCX

Upon information and belief, Chem Inc. has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

47.     Third-Party Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina. Upon information and belief, Nation Ford manufactured, formulated, and/or sold Fluorosurfactant Products to certain Third-Party Defendants for use in AFFF. Upon information and belief, Nation Ford has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

48.     Third-Party Defendant AGC, Inc. ("AGC"), formerly known as Asahi Glass Co., Ltd. ("Asahi Glass"), is a Japanese corporation with its principal place of business located at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo, Japan. Upon information and belief, Asahi Glass Co., Ltd. changed its name to AGC, Inc. in 2018.

49.     Third-Party Defendant AGC Chemicals Americas, Inc. ("AGCCA") is a Delaware corporation with its principal place of business located at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania. Upon information and belief, AGCCA is a subsidiary of AGC and/or Asahi Glass. Upon information and belief, AGCCA has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

50.     Third-Party Defendant Deepwater Chemicals Company ("Deepwater") is a Delaware corporation with its principal business office at 196122 E County Road 40, Woodward, Oklahoma. Upon information and belief, Deepwater manufactured, formulated, and/or sold Fluorosurfactant Products to certain Third-Party Defendants for use in AFFF. Upon information and belief, Deepwater has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                    CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES            PAGE 13 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 13 of 26**

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 13 of 26

51.     Third-Party Defendant Archroma Management, LLC ("Archroma") is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

52.     Third-Party Defendant Archroma U.S., Inc. ("Archroma U.S.") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina. Upon information and belief, Archroma U.S. is a subsidiary of Archroma. Upon information and belief, Archroma U.S. has conducted and/or availed itself of doing business throughout the United States, including in Alaska.

53.     Upon information and belief, Third-Party Defendants John Doe 1-49 were manufacturers and/or sellers of Fluorosurfactant Products that are responsible for the damages caused to Third-Party Plaintiff described herein. Although the identities of the John Doe Third-Party Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Third-Party Plaintiff will move for leave of this Court to add those individuals to the Third-Party Complaint as Third-Party Defendants.

54.     Any and all references to a Third-Party Defendant or Third-Party Defendants in this Third-Party Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Third-Party Defendant.

55.     When the term "Third-Party Defendants" is used alone, it refers to all Third-Party Defendants named in this Third-Party Complaint jointly and severally. When reference is made to any act or omission of the Third-Party Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Third-Party Defendants committed or authorized such act or omission, or failed to

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.          CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 14 OF 26
508412/3/ 01061078.DOCX

Exhibit A
Page 14 of 26

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 14 of 26

adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Third-Party Defendants, and did so while acting within the scope of their employment or agency.

**GENERAL ALLEGATIONS**

**A.    THE CONTAMINANTS: PFOS AND PFOA**

56.    PFOS and PFOA are man-made chemicals within a class known as perfluoroalkyl acid ("PFAA"). PFAAs are part of the larger chemical family known as PFAS. PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. PFOS and PFOA contain eight carbon-fluorine bonds. For this reason, they are sometimes referred to as "C8."

57.    PFAAs are sometimes described as long-chain and short-chain, depending on the number of carbon atoms contained in the carbon chain. PFOS and PFOA are considered long-chain PFAAs because they contain eight carbon atoms in their chains; short-chain PFAAs have six or less carbon atoms in their chains.

58.    PFOS and PFOA are highly water soluble, which increases the rate at which they spread throughout the environment, contaminating soil, groundwater, and surface water. Their mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[1]

---

[1]    EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Doc. Number: 822-R-16-005 (May 2016) at 16; Drinking Water Health Advisory for Perfluorooctane

59.     PFOS and PFOA are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air, as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

60.     PFOS and PFOA are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

61.     Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOS and PFOA.

62.     According to the United States Environmental Protection Agency ("EPA"), "...studies indicate that exposure to PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[4]

---

Sulfonate (PFOS), EPA Doc. Number: 822-R-16-004 (May 2016) at 16, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[2]      EPA Doc. Number: 822-R-16-005 (May 2016) at 18-20, 25-27; and EPA Doc. Number: 822-R-16-004 (May 2016) at 19-21, 26 28.

[3]      EPA Doc. Number: 822-R-16-005 (May 2016) at 55; and EPA Doc. Number: 822-R-16-004 (May 2016) at 55.

[4]      "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Doc. Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.          CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 16 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 16 of 26**

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 16 of 26

63. EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOS."[5]

64. EPA has noted that drinking water can be an additional source of PFOA/PFOS in the body in communities where these chemicals have contaminated water supplies. In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example...an airfield at which [Fluorosurfactant Products] were used for firefighting."[6]

**B. AQUEOUS FILM-FORMING FOAM**

65. AFFF is a type of water-based foam that was first developed in the 1960's to extinguish flammable liquid fuel fires at airports and military bases, among other places.

66. The AFFF designed, manufactured, marketed, distributed, and/or sold by Third-Party Defendants contained PFOS and/or PFOA.

67. PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF"). 3M was the only manufacturer that used ECF; all other AFFF producers manufactured fluorosurfactants for use in AFFF through the process of telomerization, which produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

---

[5] "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Doc. Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[6] "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Doc. Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

68.     AFFF can be made without PFOS or PFOA. Fluorine-free and short-chain foams do not release PFOS or PFOA into the environment.

69.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion.

70.     When used as the Third-Party Defendants intended and directed, Third-Party Defendants' AFFF releases PFOS and/or PFOA into the environment.

71.     Once PFOS and PFOA are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, sediment, surface water, and groundwater.

72.     The use of Third-Party Defendants' Fluorosurfactant Products as directed and intended by the Third-Party Defendants allowed PFOS and PFOA to enter the State of Alaska's natural resources, where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface water, soil, sediment, and groundwater, as well as causing other extensive and ongoing damage to the State.

73.     Due to the chemicals' persistent nature, among other things, these chemicals have and continue to cause injury and damage to Third-Party Plaintiff.

C.     **THIRD-PARTY DEFENDANTS' KNOWLEDGE OF THE HAZARDS OF PFOS AND PFOA**

74.     On information and belief, by the early 1980's, Third-Party Defendants knew or reasonably should have known, among other things, that: (a) PFOS and PFOA are toxic; and (b) when AFFF or other products containing PFOS, PFOA, and/or their

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.          CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 18 OF 26
508412/3/ 01061078.DOCX

precursor chemicals is sprayed or otherwise released in the open environment, per the instructions given by the manufacturer, PFOS and PFOA readily migrate through the subsurface, mix easily with surface water and groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

75.     Third-Party Defendants also knew, or reasonably should have known, that PFOS and PFOA could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOS and PFOA can persist in the body for prolonged periods of time.

76.     In 1980, 3M published data in peer-reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[7]

77.     By the early 1980's, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

78.     In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers

---

[7]     Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

between 1979 and 1981 had birth defects – one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

79.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memorandum, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that ... exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

80.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

81.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 and Forafac 1157N, for use in the manufacturing of AFFF products.

82.    On information and belief, in 2001 DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and contaminated the State of Alaska, including its property and its natural resources.

---

[8]    Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

[9]    Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

83. DuPont had been studying the potential toxicity of PFOA since at least the 1960's and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what it knew about the substance's potential effects on humans, animals, or the environment.[10]

84. By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History."[11] The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[12]

85. By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link" between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-

---

[10]    *Id.*, Fred Biddle, "DuPont confronted over chemical's safety," Wilmington News Journal (Apr. 13, 2003). The Wilmington News Journal is published in Wilmington, Ohio.

[11]    $16.5 million.

[12]    U.S. Environmental Protection Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed January 30, 2018).

induced hypertension and preeclampsia.[13,14]  By October 2012, the C8 Science Panel

had notified DuPont of a probable link between PFOA and five other conditions—high

cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

86.    In July 2015, DuPont spun off its chemicals division by creating Chemours

as a new publicly-traded company, once wholly-owned by DuPont. By mid-2015, DuPont

had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

87.    Notwithstanding this knowledge, Third-Party Defendants negligently and

carelessly: (a) designed, manufactured, marketed, distributed, sold, and/or assumed or

acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products;

(b) issued instructions on how Fluorosurfactant Products should be used and disposed of

(namely, by washing the foam into the soil or wastewater system), thus improperly

permitting PFOS, PFOA, and/or their precursor chemicals to contaminate the State of

Alaska, including its property and natural resources; (c) failed to recall and/or warn the

users of Fluorosurfactant Products, negligently-designed products containing or

degrading into PFOS and/or PFOA, of the dangers of surface water, soil, sediment, and

groundwater contamination as a result of standard use and disposal of these products;

and (d) further failed and refused to issue the appropriate warnings and/or recalls to the

users of Fluorosurfactant Products, notwithstanding the fact that Third-Party Defendants

---

[13]    Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.

[14]    The C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), http://www.c8sciencepanel.org/ pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed January 28, 2018).

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.               CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES               PAGE 22 OF 26
508412/3/ 01061078.DOCX

knew or could reasonably ascertain the identities of the purchasers of their Fluorosurfactant Products.

88.    As a direct and proximate result of Third-Party Defendants' actions and/or inactions alleged in this Third-Party Complaint, property and natural resources in the State of Alaska, including sediment, soil, surface water, groundwater, drinking water and/or water treatment systems, have been and will continue to be contaminated with PFOA and PFOS, creating an environmental hazard, unless such contamination is remediated. As a direct and proximate result of Third-Party Defendants' actions and/or inactions, Third-Party Plaintiff must assess, evaluate, investigate, monitor, treat, filtrate, remove, clean up, correct, and/or remediate PFOA and PFOS contamination within the State of Alaska at significant expense, loss, and damage to Third-Party Plaintiff.

89.    Third-Party Defendants had a duty and breached their duty to evaluate and test such Fluorosurfactant Products adequately and thoroughly to determine their potential human health and environmental impacts before they sold such products. Third-Party Defendants also had a duty and breached their duty to minimize the environmental harms caused by Fluorosurfactant Products.

### D.    THE IMPACT OF PFOS AND PFOA ON THE STATE OF ALASKA

90.    PFOS and PFOA have been detected in varying amounts, at varying times, in the State of Alaska and its natural resources. The presence of PFOS and PFOA in the State is an ongoing matter that the State continues to address and will do so into the future.  In addition to existing contamination caused by PFOS and PFOA, including but not limited to contamination caused by the use of AFFF, it is the further contention of Third-Party Plaintiff that any future release of PFOA or PFOS in any amount should be

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                    CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 23 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 23 of 26**

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 23 of 26

reported pursuant to applicable state laws (i.e. AS 46.09.010 and 18 AAC 75.300) and may thereafter require further investigation, treatment, remediation, and monitoring.

91.     The detection and/or presence of PFOS and/or PFOA, and the threat of further detection and/or presence of PFOS and/or PFOA in the State of Alaska and its natural resources in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damages to Third-Party Plaintiff.

92.     On information and belief, the invasion of the State of Alaska and its natural resources, including but not limited to sediment, soil, surface water and groundwater, with PFOS and PFOA is recurring, resulting in new harm to Third-Party Plaintiff on each occasion.

93.     The injuries to Third-Party Plaintiff caused by Third-Party Defendants' conduct constitute an unreasonable interference with, and damage to, Third-Party Plaintiff, its property, its natural resources, and its citizens. Third-Party Plaintiff's interests in protecting its property, natural resources, and citizens constitute a reason for seeking the relief and allocation of fault as described herein.

94.     As a direct and proximate result of the forgoing allegations, Plaintiffs James F. Saracco and Lisa L. Etherington allegedly sustained personal injuries and damages that should be properly born by Third-Party Defendants in full.

### PRAYER FOR RELIEF

WHEREFORE, Defendant/Third-Party Plaintiff, the State of Alaska, prays for the following relief:

1.     For apportionment of fault and damages allocated to each Third-Party Defendant, or other person(s) responsible for the damages claimed by Plaintiffs;

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                    CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES          PAGE 24 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 24 of 26**

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 24 of 26

2.    For judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault;

3.    For an award of reasonable attorneys' fees and costs incurred by Defendant/Third-Party Plaintiff in defending against Plaintiffs' Complaint and in prosecuting its Third-Party Complaint herein, as permitted by law; and

4.    For such other and further relief as this Court deems just and proper.

DATED this 7th day of April, 2021.

BIRCH HORTON BITTNER & CHEROT
Attorneys for State of Alaska

By: s / Aaron D. Sperbeck / _____
      Aaron D. Sperbeck, ABA #0511112
      Michael J. Schwarz, ABA #1905045

STATE OF ALASKA
Treg R. Taylor, Attorney General
Daryl A. Zakov, ABA #NA20227

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of April, 2021, a true and correct copy of the foregoing was served on the following in the manner indicated:

| Christian Bataille<br>Michael W. Flanigan<br>Flannigan & Bataille<br>1007 W. 3rd Ave., Ste 206<br>Anchorage, AK 99501<br>cbataille@farnorthlaw.com<br>mflanigan@farnorthlaw.com<br>jrasor@farnorthlaw.com | ☐ U.S. Mail<br>☐ Facsimile<br>☑ Electronic Delivery<br>☐ Hand Delivery |
|---|---|
| Kevin S. Hannon<br>The Hannon Law Firm<br>1641 Downing Street<br>Denver, CO 80218<br>khannon@hannonlaw.com<br>cbennett@hannonlaw.com | ☐ U.S. Mail<br>☐ Facsimile<br>☑ Electronic Delivery<br>☐ Hand Delivery |

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.  CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES PAGE 25 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 25 of 26**

Robert P. Blasco
Hoffman & Blasco, LLC
9360 Glacier Highway, Ste 202
Juneau, AK 99801
rpblasco@hoffmanblasco.com
mjcostello@hoffmanblasco.com
rpbparalegal@hoffmanblasco.com

☐ U.S. Mail
☐ Facsimile
☑ Electronic Delivery
☐ Hand Delivery

Daryl Zakov
State of Alaska, Department of Law
1031 W. 4th Ave., Ste 200
Anchorage, AK 99501
daryl.zakov@alaska.gov
kamie.willis@alaska.gov

☐ U.S. Mail
☐ Facsimile
☑ Electronic Delivery
☐ Hand Delivery

BIRCH HORTON BITTNER & CHEROT

By: s / G. Fontanez / _____

SARACCO, ET AL. V. STATE V. 3M COMPANY, ET AL.                    CASE NO. 1JU-20-00758 CI
THIRD-PARTY COMPLAINT FOR APPORTIONMENT OF DAMAGES               PAGE 26 OF 26
508412/3/ 01061078.DOCX

**Exhibit A**
**Page 26 of 26**

Case 1:21-cv-00015-JWS   Document 1-1   Filed 08/16/21   Page 26 of 26